WILLIAM WILLIAMS *vs.* JOHN H. CHENEY & another.

Evidence that an indorsement of a note held by a corporation was made by their secretary, with the knowledge and consent of their directors, is evidence from which a jury may infer the secretary's authority to indorse.

In an action on a note given to a foreign corporation by their corporate name, the production of the note, duly indorsed to the plaintiff, is sufficient evidence that the corporation was duly organized and competent to transact business, if these facts are not denied in the answer.

In an action on a note given to a foreign insurance company for a premium of insurance, and duly indorsed before maturity, a performance by the company of the acts required by the statutes of this state and of the state where they are incorporated, in order to enable them to insure, is to be presumed, in the absence of evidence to the contrary.

Answers of a party to a suit, to interrogatories filed under *St.* 1852, *c.* 312, § 61, are competent evidence against him of the facts stated therein, in another suit, although the issues in the two suits be different.

The Rev. Sts. *c.* 37, § 42, and *St.* 1847, *c.* 278, § 2, which prohibit foreign insurance companies from insuring in this state, without the actual payment and investment of a certain amount of capital stock, do not apply to mutual insurance companies.

The cancelling of a policy of insurance by the insurers and the insured does not affect the rights of a *bona fide* indorsee for value of the premium note.

A note given for a premium of insurance to a foreign insurance company which had not complied with the requirements of Rev. Sts. *c.* 37, and *St.* 1847, *c.* 273, was void in their hands, before *St.* 1854, *c.* 453, took effect, but was valid in the hands of a *bona fide* holder for value without actual notice of such noncompliance; and the fact that the holder was the treasurer, a director, and one of the executive committee of the company, is not conclusive evidence that he had such notice.

A party, to whom notes, on which the payee could maintain no action, are indorsed, without notice, in trust as collateral security for the payment of certain debts of the payee, can recover in a suit upon the notes only the amount of the sums actually due from the payee to such creditors, after deducting any debts owing from them to him.

ACTION OF CONTRACT to recover the amount of five promissory notes made by the defendants, each payable absolutely, at a certain time after date, to the order of the Merchants' Mutual Insurance Company of Buffalo (N. Y.) and given for premiums upon contracts of insurance made in this commonwealth, and indorsed to the plaintiff by the secretary of said insurance company.

At the trial in the court of common pleas, before *Hoar*, J. the plaintiff, for the purpose of showing the authority of the secretary to indorse these notes, gave in evidence a vote of the directors of the company, passed on the 8th of September 1851, authorizing the secretary to assign to the plaintiff securities to the amount of $15,000, in trust, as collateral for the payment of certain drafts of the company, on which advances had been made by some of the directors and stockholders, who then owed the company more than the amount of these advances; and proved that the secretary, on the same day, pursuant to this vote, assigned to the plaintiff securities to a sufficient amount, and, on the 15th of December 1851, without any further vote of the directors, and intending to act under this vote, changed said securities, with the consent of a part of said creditors, and indorsed the notes in suit, together with other notes, to the plaintiff, in the stead of some of the securities first assigned. The secretary testified that he had never before assigned or indorsed the company's paper to be held as collateral security; but that he had frequently indorsed it for the purpose of being discounted; and that his indorsements of the notes in suit were made with the knowledge and consent of the directors.

The defendants asked the judge to rule that, under these circumstances, the power, conferred upon the secretary by the vote, was fully complied with and exhausted by the first assignment, and that he had not the power to substitute other securities in the place of those first assigned, without additional authority from the directors. But the judge declined so to rule, and ruled that this would be evidence of a legal indorsement of said notes.

The defendants requested the judge to rule that the burden of proof was upon the plaintiff to prove that said company had complied with the Rev. Sts. *c.* 37, so far as they related to foreign insurance companies, and with the requirements of *St.* 1847, *c.* 273. But the judge declined so to rule.

The said company was not incorporated by a special statute, but purported to be organized under a general law of the State of New York. The defendant asked the judge to rule that the

plaintiff must prove that they were legally organized under said law. But the judge declined so to rule, and ruled that such proof was unnecessary, because the defendants had dealt with said company as a corporation, and had made the notes payable to them, and received policies from them.

By the law of New York, every mutual insurance company was bound to have subscriptions for insurance, the premiums on which should amount to $100,000, before issuing policies. The defendants asked the judge to rule that the plaintiff must prove that said company had received subscriptions to this amount before issuing policies. But the judge declined so to rule.

The plaintiff was the treasurer, a director, and one of the executive committee of the company, and knew, when he received the notes, that they had been given for contracts of insurance made in this commonwealth. The defendants contended that he was bound to know whether the Massachusetts laws had been complied with. But the judge declined so to rule.

The defendants proposed to read in evidence the answers of the plaintiff to interrogatories filed by the defendants to another suit pending in this court, in which the issues were not the same as in this case. The plaintiff objected, but the judge overruled the objection, and allowed them to be read.

The defendants then asked the judge to rule that these notes were void, because the capital stock of said company was not actually paid in and invested, but consisted of the obligations of stockholders, none of which had been paid, and because said company was not restricted by its charter or otherwise from insuring at any one risk a greater hazard than one tenth part of its capital. But the judge declined so to rule, and ruled that these notes would be void, if the provisions of Rev. Sts. *c.* 37, § 42. and *St.* 1847, *c.* 273, § 2, applied to said company, as the plaintiff knew that said stock had not been paid in, and that said company was not restricted as required; but that said company was so far a mutual company that the provisions of those statutes did not apply to it.

The defendants proved that on the 20th of January 1852 they carried their policies to the agent of said company to be

cancelled, and that the agent cancelled them and fixed the amount that the defendants should pay upon these notes; and the agent testified that he would have given up the notes, if he had had them; but that he had not the notes in his possession, and therefore told the defendants that he could receive no money nor give up the notes.

The defendants asked the judge to rule that thereby the contracts were annulled; and that in no event could the plaintiff recover more than the amount thus found by the agent to be the amount of the plaintiff's proportion of said notes, earned by said company, or due said company at said time. But the judge declined so to rule, and ruled that these acts had no influence upon the case, if done without the consent of the plaintiff.

The judge instructed the jury that, as the insurance company to whom these notes were given were prohibited by the laws of Massachusetts from effecting an insurance through an agent in this commonwealth, until they had complied with certain conditions prescribed by the Rev. Sts. *c.* 37, § 41, and the *St.* of 1847, *c.* 273, § 3; and as the evidence showed that they had failed to comply with these conditions, the contract of insurance was therefore prohibited, and there was no legal consideration for the notes, and if they had remained the property of the company they could not be collected. To this instruction the plaintiff excepted.

The judge further instructed the jury that, as the plaintiff took these notes before they were due, for a valuable consideration, if he took them in good faith and without notice of any fact which would affect or impair their validity, they would be good in his hands, notwithstanding their want of legal consideration; that the notes being known to the plaintiff to be premium notes, to have been dated in Massachusetts, and to have been taken by the agent of the company in Massachusetts for an insurance effected here, the plaintiff would be presumed to know the laws of Massachusetts applicable to contracts of this description; that the question would then arise whether the plaintiff knew or had sufficient notice that the requirements of those laws had not been complied with; that the agent might have complied with them without the knowledge of the plaintiff, and

there would be no presumption of law that the agent had not complied with them; but the contrary, the ordinary presumption being that every thing is done rightly and according to law; but that the jury were to determine whether, from the situation of the plaintiff and his knowledge of the affairs of the company, it sufficiently appeared that he knew or had reason to know that some things which are required by the laws of Massachusetts had not been done; that the jury were not to inquire whether the plaintiff knew what the laws of Massachusetts required, for that was to be presumed, conclusively; but only whether he knew or had reason to know that what those laws required had not in fact been done.

The jury thereupon retired, and were unable to agree upon a verdict.

The judge then, by consent of counsel, and in order to present the questions of law in a shape to be finally settled, instructed the jury that, upon the facts proved, the notes were invalid in the hands of the plaintiff; the jury returned a verdict for the defendants; and the plaintiff alleged exceptions to this instruction.

*H. Jewell*, for the plaintiff.

*C. E. Pike & B. Dean*, for the defendants.

BIGELOW, J. It appears to us that the rulings and instructions under which this case was originally submitted to the jury were correct, so far as they were applicable to the several points raised by the counsel at the trial; and that the only just ground of exception is to the final ruling, in compliance with which the verdict was rendered by order of court, after the jury had failed to agree upon the questions of fact involved in the issue.

1. The authority of the secretary of the insurance company to make an assignment and transfer of the notes in suit to the plaintiff was a question of fact, to be determined by the jury, on the whole evidence bearing on this part of the case. The facts proved by the plaintiff upon this point were competent evidence to be submitted to the jury. The judge was therefore right in refusing to rule, as matter of law, that the authority was not shown.

2. The production, by the plaintiff, of the notes declared on, duly indorsed, was sufficient *prima facie* evidence that the corporation were duly organized, and competent to transact business. The defendants, by giving their notes to the corporation in their corporate name, as payees, admitted their legal existence and capacity to make and enforce the contracts declared on, so far, at least, as to render proof on that point unnecessary in the opening of the plaintiff's case. Angell & Ames on Corp. § 635. Besides; the defendants did not deny the legal existence and organization of the corporation in their answer. They could not, therefore, avail themselves of it in defence to the action. *Christian Society* v. *Macomber*, 3 Met. 235. *St.* 1852, *c.* 312, §§ 14, 18, 26, 27.

3. Nor was it necessary for the plaintiff to prove, as part of his *prima facie* case, before putting the defendants to their proof in defence of the action, that the corporation to which the notes were made payable, had complied with the requisitions of the statutes of New York, and of this commonwealth, in relation to mutual insurance companies. The notes, being for value received, on proof of their due indorsement by the payee before maturity, were of themselves sufficient, in the absence of all evidence on the part of the defendants, to make out a *prima facie* case. Until the contrary was proved, the maxim *omnia rite acta præsumuntur*, was applicable. *Bayley* v. *Taber*, 6 Mass. 451.

4. The answers of the plaintiff, to interrogatories filed in another suit, were competent evidence, so far as they contained admissions by him of facts material and relevant to the points in issue in this action. By *St.* 1852, *c.* 312, § 67, all interrogatories are required to be answered fully, and the party interrogated is allowed to introduce into his answer any matter relevant to the issue to which the inquiry relates. These provisions secure to parties the right to make complete statements of all facts in relation to which they may be interrogated in any suit, and guard them against being compelled to make partial and garbled disclosures in answer to artfully contrived questions. There can therefore be no danger or hardship in allowing such statements to be used in evidence, in like manner as other admissions of a

party to a suit, fairly made, are ordinarily admitted against him.

5. The provisions of Rev. Sts. *c.* 37, § 42, as modified by *St.* 1847, *c.* 273, § 2, do not apply to insurance companies organized and doing business on the mutual principle. They are, in terms, applicable only to stock companies, in which there is a fixed, definite capital, " actually paid in in money, and invested." This cannot include mutual insurance companies. Strictly speaking, they have no capital stock belonging to the corporation, and forming a permanent fund out of which losses are to · be paid. Their resources or funds usually consist only of deposit notes and premiums on policies of insurance, which fluctuate from time to time, according to the amount at risk ; and the larger portion of which is never realized by the corporation in money, unless required for the payment of losses. But if there were any doubt on this point, it is made entirely clear by *St.* 1847, *c.* 273, § 3, which enacts, that the provisions of said section of the revised statutes shall not prohibit the making of insurance in this state by any company incorporated elsewhere on the mutual principle—clearly implying that its provisions are not applicable to such corporations.

The only question remaining on this part of the case is, whether the corporation, to which the notes in suit were made payable, is a mutual insurance company. Upon looking into the provisions of its charter, as fixed and established according to the provisions of the general statute of New York, we find that it is organized solely for the purpose of making contracts of insurance on the mutual principle. Its members consist only of persons holding policies in the company ; its capital is to consist of premium notes ; and its losses and expenses are to be borne and paid by assessments on such notes in proportion to their amount. These constitute the main and essential features of a mutual insurance company, as generally known under the laws of this commonwealth and elsewhere, and leave no doubt as to the nature and character of the company in question. The ruling of the court, therefore, that the provisions of Rev. St. *c.* 37, § 42, and *St.* 1847, *c.* 273, § 2, did not apply to said company, was correct.

6. The acts of the defendants and the agent of the insurance company, in cancelling the policies on which the notes in suit were given, being done without the knowledge or assent of the plaintiff, and after the notes were in his hands, cannot affect his right to recover on them, if he is a *bona fide* holder of them for value. The defendants, by the indorsement of the notes, had become bound to the plaintiff for the fulfilment of their contracts, and could not escape from them by any such transaction with the payee. This is too clear to admit of any doubt.

7. It was admitted at the trial that the agent of the insurance company to which the notes in suit were made payable, as premium or deposit notes, had not complied with the requirements of Rev. Sts. *c.* 37, § 41, and 1847, *c.* 273, § 3, which relate to mutual insurance companies ; and that he was therefore prohibited by Rev. Sts. *c.* 37, § 43, from making the contracts of insurance in this state, upon which the notes were given by the defendants. The consideration of the notes was therefore a contract, on the part of the insurance company, made through their agent, which he was prohibited from making by the statutes of this commonwealth. Under these circumstances, it is very clear, upon the well settled doctrine in this commonwealth, that the payee of the notes could maintain no action upon them. The contracts of insurance having been made in direct violation of the statutes of this commonwealth, the consideration of the notes was illegal, and they could not be enforced in the hands of the original party. *Wheeler* v. *Russell,* 17 Mass. 258. Courts of justice will not lend their aid to carry into effect contracts entered into by parties with a view of accomplishing any thing which is prohibited by law. But it is equally clear and well settled that, if the consideration of a negotiable security is against law, yet the security cannot be avoided on that account in the hands of a *bona fide* holder, who is not privy to the illegality of the consideration. *Ayer* v. *Hutchins,* 4 Mass. 370. *Churchill* v. *Suter,* 4 Mass. 161. The instructions given to the jury were in accordance with these familiar principles of law ; and the facts of the case, bearing upon them, were submitted to the jury with appropriate comments, to which we can see no valid objection.

It was suggested at the argument, that by *St.* 1851, *c.* 331, § 6, which was in force when the notes in suit were given, contracts of insurance are expressly made valid and binding, notwithstanding the requisitions of the statute have not been complied with by the company. But the provision referred to applies solely to a noncompliance with the requisitions of that statute, and does not in any way refer or relate to the provisions of Rev. Sts. *c.* 37, §§ 40–43, and *St.* 1847, *c.* 273, § 3. The *St.* of 1851 relates solely to the appointment of agents of foreign insurance companies in this commonwealth for certain purposes, and the mode of filing evidence of their authority, and leaves the provisions of the former laws entirely unaffected by its provisions. By *St.* 1854, *c.* 453, however, which is a general act, making provisions concerning insurance by foreign insurance companies on property in this commonwealth, and repealing all former statutes inconsistent therewith, it is expressly enacted that all contracts made shall be valid and binding, although the companies and their agents have failed to comply with the requisitions of that statute. § 36. But it is also provided that this act shall have no effect on any action then pending, § 45. Besides ; a statute cannot retrospectively give validity to a void contract.

We have now gone over the several points raised by counsel at the trial, and comprehended in the original instructions given to the jury. If a verdict had been rendered under these instructions, we can see no valid objection in law which could have been taken by either party. But the jury having failed to agree, the court, for the purpose of determining the various questions of law in the case, ruled that the plaintiff was not entitled to recover, and directed a verdict for the defendants. This instruction cannot be maintained, for the obvious reason that it necessarily assumes the decision of facts, which it was the province of the jury exclusively to settle. In certain aspects of the case, accordingly as the facts might be found by the proper tribunal, the plaintiff would be entitled to recover ; and this indeed was assumed in the instructions first given to the jury. Although, in the mind of the judge, the evidence in favor of the defendants

might have greatly preponderated, the case nevertheless presented questions of fact for the determination of the jury. He might have set aside their verdict, if in his opinion it was against the evidence or the weight of evidence, but he was not authorized to say what the verdict should be. For this reason, we are of opinion that the verdict must be set aside.

We have abstained from expressing any opinion upon questions not raised at the trial, although several were for the first time suggested in the arguments at the bar of this court. But there is one point so obvious, as to render it proper, with a view to a correct disposition of the case upon a new trial, to express an opinion upon it at this time. It is agreed that the plaintiff holds the notes in suit, as trustee for certain persons, to secure them against certain liabilities which they have assumed for the insurance company. It is stated in the exceptions that all these *cestuis que trust* were stockholders in the company, and owed the company notes to a larger amount than the sums for which they are liable on account of the company. If this be so, then it is clear that the plaintiff, if he recovers in this action on these notes, will not hold the money for the use of the parties for whose benefit he originally took them as trustee. Their liabilities on account of the company are more than balanced by their debts to the company. The plaintiff then would hold the proceeds of the notes for the benefit of the company, from whom he received them. Having been assigned to him as collateral security only for the benefit of certain *cestuis que trust*, and their principal liability being in fact extinguished by the sums which they owe to the company, the purpose of the trust is accomplished, and the plaintiff holds the notes for the benefit of the assignor. To permit the plaintiff to recover on such a state of facts would be to allow the company to realize the proceeds of the notes to which they are not in law entitled. The plaintiff must recover, if at all, as a *bona fide* holder for value. He cannot claim to stand on such a footing, if the purpose of the trust on which he received the notes in suit is substantially fulfilled.

*Exceptions sustained.*